**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ALTAGRACIA DIAZ, on behalf of herself and all others similarly situated,

Plaintiff,

-against-

RESIDENTIAL CREDIT SOLUTIONS, INC.,

Defendant.
-----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-3781 (ADS) (ETB)

**APPEARANCES:**

**Kleinman LLC**
*Attorneys for the Plaintiff*
626 RXR Plaza
Uniondale, NY 11556-0626
By: Abraham Kleinman, Esq., Of Counsel

**Edelman, Combs, Latturner & Goodwin, LLC**
*Attorneys for the Plaintiff*
120 South LaSalle Street
18th Floor
Chicago, IL 60603
By: Cathleen M. Combs, Esq., & Tiffany N. Hardy, Esq., of Counsel

**Doonan, Graves & Longoria, LLC**
*Attorneys for the Defendant*
100 Cummings Center
Suite 225D
Beverly, MA 01915
By: John A. Doonan, Esq., Stephen M. Valente, Esq., & Reneau J. Longoria, Esq., of Counsel

**SPATT, District Judge.**

On July 31, 2012, the Plaintiff Altagracia Diaz ("the Plaintiff"), on behalf of herself and all others similarly situated, commenced this action against the Defendant Residential Credit Solutions, Inc. ("the Defendant" or "RCS") for alleged unlawful credit and collection practices engaged in by the Defendant in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 et seq. ("FDCPA"). Presently before the Court is the Defendant's motion to dismiss, to which the Plaintiff has responded and simultaneously filed an Amended Complaint. For the reasons set forth below, this Court denies the Defendant's motion.

## I. BACKGROUND

The following facts are drawn from the Plaintiff's Amended Complaint and construed in a light most favorable to the Plaintiff.

### A. Underlying Facts

On or about May 5, 2012, the Defendant sent a validation notice to the Plaintiff seeking to collect an alleged consumer debt. In this regard, the validation notice claimed that the Plaintiff owed a sum to JP Morgan Mortgage Acquisition Corporation ("JP Morgan") in connection with a mortgage loan. The total debt was for $370,430.91.

According to the Plaintiff, the validation notice "is a form letter (designated OL0315) which [the] [D]efendant uses for the purpose of attempting to comply with 15 U.S.C. § 1692g." (Amend. Compl., ¶ 9.) In addition, the "Plaintiff did not receive any other document from [the] [D]efendant purporting to contain the initial disclosures required by 15 U.S.C. § 1692g." (Amend. Compl., ¶ 10.)

The Defendant's May 5, 2012 letter advised the Plaintiff as follows:

> You may notify RCS in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed. If no notice is received by RCS within the 30 day period, it will be assumed that the above information is accurate and the debt is valid. If/once written notice is received within the 30 day period, RCS will obtain verification of the debt or a copy of a judgment against you, the consumer. A copy of the verification of debt or judgment will be mailed to the mailing address on record for you along, with, if requested in writing, a statement that provides the name and address of the original creditor.

(Amend. Compl., Exh. A.)

The Plaintiff asserts that this passage violates the FCPA, specifically 15 U.S.C. §§ 1692g(a), 1692e, 1692e(2) and 1692e(10). In this regard, the Plaintiff alleges that the letter (1) "[s]tates that any dispute that the debtor elects to send is to be in writing, when a writing is only necessary to obtain verification of the debt or the identification of the original creditor"; (2) indicates that the Defendant needs to receive notice that the debt is being disputed within the 30 day period, when the Plaintiff is only required to send her notice within that period and is not required to guarantee receipt; (3) "[s]tates that '[i]f no notice is received by RCS within the 30 day period, it will be assumed that . . . the debt it is valid," without limitation, when only RCS and its principal may assume that it is valid"; and (4) "[s]tates that all information set forth in the letter concerning the debt will be assumed to be valid, including information which the debtor knows nothing about and can know nothing about, such as whether RCS is holding any 'unapplied funds' and whether there is a negative 'escrow balance,'" even though there is no authorization for this found in 15 U.S.C. § 1692g. (Amend. Compl, ¶ 12.)

**B. Procedural History**

As mentioned above, on July 31, 2012, the Plaintiff commenced this action by filing the Original Complaint in the Eastern District of New York seeking "(1) [a] declaration that [the D]efendant's letter violates the FDCPA; (2) [s]tatuory damages; [and] (3) [a]ttorney's fees, litigation expenses and costs of suit[.]" (Orig. Compl., "WHEREFORE" ¶.) The Original Complaint asserted only one cause of action for violations of the FDCPA and also sought to bring this action on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). The sole allegation included in the Original Complaint is that the Defendant's May 5, 2012 letter "fail[ed] to comply with [] 15 U.S.C. § 1692g(a)(3) because it state[d] that the notice must be in writing." (Orig. Compl., ¶ 10.)

On October 23, 2012, pursuant to Fed. R. Civ. P. 12(b)(6), the Defendant moved to dismiss the Plaintiff's Original Complaint for failure to state a claim. The Defendant argues that its correspondence and communication with the Plaintiff regarding the Plaintiff's debt complied with all state and federal laws, including the FDCPA.

On November 6, 2012, the Plaintiff filed her opposition to the Defendant's motion to dismiss. In addition, also on November 6, 2012 and pursuant to Fed. R. Civ. P. 15(a)(1), the Plaintiff filed an Amended Complaint. In the Amended Complaint, the Plaintiff asserted the same cause of action as the Original Complaint, still sought to bring the action on behalf of a class and requested the same relief. However, the Plaintiff provided additional factual allegations in support of her lawsuit, as set forth above.

On November 14, 2012, the Defendant filed its reply in further support of its motion to dismiss. In its reply, the Defendant contends that the Plaintiff's Amended Complaint is not materially different than the Original Complaint and should be dismissed.

The Court notes that the Defendant uses footnotes in its memorandum of law and reply memorandum, which is a violation of this Court's Individual Rule II.A. Notwithstanding this violation, the Court will consider the Defendant's papers while rendering its decision. However, the Court advises defense counsel that any future filings that contain footnotes will not be considered by this Court.

## II. DISCUSSION

### A. Legal Standard Under Fed. R. Civ. P. 12(b)(6)

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.

2d 929 (2007). Indeed, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)).

In deciding a motion to dismiss, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. Ashcroft, 129 S. Ct. 1937 at 1949–50; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris, 572 F.3d at 72 (quoting Iqbal, 129 S. Ct. at 1949). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950. Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).

In addition, in its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied

on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v. Hartford Fin. Servs. Group, No. 11-3284-cv, 2012 U.S. App. LEXIS 18394, at *5–6 (2d Cir. Aug. 30, 2012). Moreover, relevant here, "[w]hen a plaintiff amends its complaint while a motion to dismiss is pending, . . . the 'court then has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (citation and internal quotation marks and altercations omitted). In this case, the Court will consider the merits of the Defendant's motion in light of the Plaintiff's Amended Complaint.

**B. Legal Standard Under the FDCPA**

"The FDCPA creates a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (citing 15 U.S.C. § 1692e). In this regard, 15 U.S.C. § 1692e(2), in relevant part, prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). Also, § 1692e(10) proscribes a debt collector from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Further, "15 U.S.C. § 1692g requires debt collectors to include a 'validation notice' either in the initial communication with a consumer in connection with the collection of a debt or within five days of that initial communication, which must inform the consumer that he or she has certain rights, including the rights to make a written request for verification of the debt and to

dispute the validity of debt." Miller, 321 F.3d at 309 (citing 15 U.S.C. § 1692g(a)). In particular, § 1692g(a) requires that the validation notice include:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification of judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

See Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F. Supp. 2d 200, 205 (E.D.N.Y. 2009). "[U]nless a debt collector conveys this statutorily-required information, it violates the [FDCPA]." Hecht v. Green Tree Servicing, LLC, Civil No. 3:12cv498(JBA), 2013 U.S. Dist. LEXIS 6056, at *5 (D. Conn. Jan. 15, 2013). Also, of relevance in the instant case, § 1692g(c) states that "the failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."

The Second Circuit has provided the following guidance for analyzing alleged violations of § 1692(g):

> "When determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied." Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996) (citing Clomon [v. Jackson], 988 F.2d [1314, 1318

> (2d Cir. 1993)] (holding that the least sophisticated consumer standard applies to whether § 1692e has been violated)). "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the [FDCPA]." Id. (citing Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)). "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998).

Miller, 321 F.3d at 300. See also, Hecht, 2013 U.S. Dist. LEXIS at *5 ("'[E]ven if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'") (citing DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001)).

Of importance, "the plaintiff's actions in response to [a] collection letter are not determinative of the question of whether there has been a violation of the FDCPA. Rather, the issue is an objective one: namely, whether the language of the letter would mislead the least sophisticated consumer." Wyler v. Computer Credit, Inc., 04 CV 2762 (CLP), 2006 U.S. Dist. LEXIS 57766, at *34 (E.D.N.Y. Mar. 3, 2006). "Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." Rozier v. Fin. Recovery Sys., 10-CV-3273 (DLI) (JO), 2011 U.S. Dist. LEXIS 61307, at *7 (E.D.N.Y. June 7, 2011) (quoting Beauchamp v. Fin. Recovery Services, Inc., 10 Civ. 4864 (SAS), 2011 U.S. Dist. LEXIS 25512, at *5 n.18 (S.D.N.Y. Mar. 14, 2011)).

In addition, courts have found that "the FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector." Fasten v. Zager, 49 F. Supp. 2d 144, 148 (E.D.N.Y. 1999); see also Moore v. Diversified Collection

Services, Inc., 843 F. Supp. 2d 280, 284 (E.D.N.Y. 2012). Instead, the court need only find proof of a single violation of the FDCPA to establish civil liability against the debt collector. See Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993); Fasten, 49 F. Supp. 2d at 148; Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C., 96 Civ. 1756 (LAP), 1997 U.S. Dist. LEXIS 4517, at *10 (S.D.N.Y. Apr. 10, 1997); Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724 (D. Conn. 1990). However, "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C § 1692k(c). A debt collector who is found to have violated the FDCPA is liable for (1) actual damages; (2) statutory damages, not to exceed $1,000; and (3) the costs of the action, including reasonable attorneys' fees. 15 U.S.C. § 1692k(a); see also Nero, 655 F. Supp. at 209–10.

**C. As to the Defendant's Motion to Dismiss**

As discussed above, according to the Plaintiff, the Defendant's May 5, 2012 letter violated the FDCPA because (1) it suggests that the Plaintiff was required to dispute the debt in writing, even though § 1692g(a)(3) does not impose a writing requirement; (2) it indicates that the Defendant had to receive the Plaintiff's notice of dispute within 30 days, even though a consumer is only required to send her notice of dispute to the debt collector within 30 days; (3) it implies that the consequences for not disputing the debt is that the debt will generally be assumed to be valid, even though § 1692g(3) only states that the debt collector may assume the debt is valid; and (4) it states that the Plaintiff's failure to respond will result in the assumption that all information in the letter, even information the Plaintiff would know nothing about, is valid, when there is no basis for this under § 1692g.

However, the Defendant maintains that its motion to dismiss should be granted, because the Plaintiff's Amended Complaint (1) incorrectly alleges that the validation notice requires and limits the Plaintiff's notice of dispute to only written form; (2) wrongly suggests that the validation notice indicated that the debt will be adjudged by any Court, government body or any other entity as absolutely valid; and (3) ignores the fact that the Plaintiff understood the intent of the validation notice and was not misled.

As an initial matter, the Court rejects the Defendant's third argument, because it relies on evidence outside the pleadings. Indeed, in making this argument, the Defendant presents evidence demonstrating that the Plaintiff corresponded with the Defendant concerning her debt following the receipt of the May 5, 2012 validation notice. However, such evidence is inappropriate for consideration by this Court on a 12(b)(6) motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512 (LTS)(GWG), 2012 U.S. Dist. LEXIS 100466, at *4–5 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss, the Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. Evidence outside these parameters may be introduced in connection with a motion for summary judgment; it cannot, however, be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

In any event, even if the Court considered the Defendant's evidence, the Defendant's position is without merit. This is because "it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." Rozier, 2011 U.S. Dist. LEXIS at *6–7 (E.D.N.Y. June 7, 2011) (citing Jacobson v. Healthcare Fin. Services, Inc., 516 F.3d 85, 91 (2d Cir. 2008)). As such, this Court need only evaluate the exact language the Defendant used in the validation notice under the least sophisticated consumer standard in coming to its conclusion.

With respect to the Plaintiff's complaint that the validation letter improperly suggested that that the Plaintiff was required to dispute the debt in writing, the Court believes that this claim raises a more complicated legal issue. In this regard, 15 U.S.C. § 1692g(a)(3) "omits any mention of a requirement that the debt be disputed in writing." Wyler, 2006 U.S. Dist. LEXIS at *21. Moreover, it appears "the Second Circuit has not addressed . . . whether consumers have a right to dispute their debts other than in writing." Id. at *21–22. Nevertheless, many "district courts within the Second Circuit that have considered the issue concluded that subsection (a)(3) does not require a consumer to write to the collection agency in order to dispute the validity of the debt." Vega v. Credit Bureau Enters., Civil Action No. 02-CV-1550 (DGT) (KAM), 2005 U.S. Dist. LEXIS 4927, at *24 (E.D.N.Y. Mar. 29, 2005) (collecting cases). However, in a more recent decision, a district court found that "this Circuit requires that Sections 1692g(a) (3) and 1692g(a) (4) be read together in constituting a writing requirement" for those consumers who wish to dispute a debt. Hooks v. Forman Holt Eliades & Ravin LLC, 11 Civ. 2767 (LAP), 2012 U.S. Dist. LEXIS 115089, at *12 (S.D.N.Y. Aug. 13, 2012) (citation and internal quotation marks omitted).

In this case, the Court is persuaded by the reasoning of those courts within the Second Circuit that have held that § 1692g(3) does not require a writing requirement. As the district court in Ong v. American Collections Enter., Inc., 98-CV-5117 (JG), 1999 U.S. Dist. LEXIS 409 (E.D.N.Y. Jan. 15, 1999), astutely explained:

> Subsection (a)(3) of § 1692g . . . does not say that the consumer must dispute the debt in writing. On the other hand, subsections (a)(4) and (a)(5) both require that the debt collector notify the consumer that if he or she disputes the debt or makes a request "in writing," then the debt collector must provide the consumer with certain information regarding the debt its seeks to collect. Moreover, § 1692g(b) states that if the consumer notifies the debt collector "in writing" within thirty days that he or she disputes the debt or a portion thereof, then the collector must cease collection activity until it obtains verification of the debt.
>
> The language and structure of these subsections indicate that the omission of the "in writing" requirement in subsection (a)(3) was intentional. Congress demonstrated (in the subsections immediately following subsection (a)(3)) its ability to impose a writing requirement on debtors; its failure to do so in subsection (a)(3) is thus less likely to be the result of inadvertence.

Id. at *5–6 (citations omitted); see also Register v. Reiner, Reiner & Bendett, PC, 488 F. Supp. 2d 143, 147 (D. Conn. 2007) ("Congress acted intentionally when it did not limit the type of dispute contemplated by section 1692g(a)(3) to a written notice, just as Congress acted intentionally when it did impose written requirements in sections (a)(4), (a)(5), and 1692g(b).") (citation omitted).

Thus, this Court holds that § 1692g(3) does "permit disputes to be raised otherwise than in writing." In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig., 208 F.R.D. 493, 502 (S.D.N.Y. 2002) (hereinafter "In re Risk Mgmt."). As a result, "a collection letter must be crafted in such a way that the least sophisticated consumer would understand that (1) she could raise a dispute in many ways, but (2) she could get verification of the debt and the name and address of the original creditor only if she disputed it in writing." Id.

Here, the parties disagree as to whether the validation notice would clearly convey to the least sophisticated consumer that the debt could be disputed in many ways. Specifically, the Defendant contends that the validation notice permits an oral dispute, because the validation notice uses the word "may" in the sentence "You may notify RCS in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed." (Amend Compl., Exh. A.) However, the Court is disinclined to agree with the Defendant's position. In the context of the sentence at issue, the word "may" might suggest to the least sophisticated consumer that she may choose to dispute the debt or not dispute it, but if she does choose to dispute the debt, she must do so in writing. Thus, even though the first sentence of the validation notice's disputed passage says "may," when read from the viewpoint of the least sophisticated consumer, it is feasible that the Defendant's validation notice may confuse a consumer into wrongly believing that the only way to dispute the validity of the debt is in writing.

Furthermore, this Court cannot look at each sentence of the validation notice in isolation, but rather, must consider the disputed passage in its entirety. In this regard, as mentioned above, the disputed passage at issue states in full:

> You may notify RCS in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed. If no notice is received by RCS within the 30 day period, it will be assumed that the above information is accurate and the debt is valid.

(Amend. Compl., Exh. A.) Despite the Defendant's argument to the contrary, it is possible that the least sophisticated consumer, when reading these sentences together, could be misled into thinking that the "notice" mentioned in the second sentence refers to the written notice that is suggested by the phrase "may notify RCS in writing" found in the first sentence.

The court's decision in In re Risk Mgmt., 208 F.R.D. at 493, is particularly instructive here. In that case, the court was confronted with the following language in a validation notice:

> Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it—by notifying us in writing to that effect—we will, as required by law, obtain and mail to you proof of the debt. And, if within the same period, you request in writing the name and address of the original creditor to whom the debt was owed, we will provide you with that information too.

Id. at 498. According to the In re Risk Mgmt. court, while "[t]here [wa]s no mention of a writing requirement in the [first] two sentences[,] [t]he following sentences . . . contain[ed] a writing requirement, and it [wa]s this juxtaposition of sentences without a clear distinction between the different options that makes th[e] letter possibly violative of the FDCPA." Id. at 502; see also Nasca v. GC Servs. Ltd. P'shp, 01 CIV. 10127 (DLC), 2002 U.S. Dist. LEXIS 16992, at *13 (S.D.N.Y. Sept. 12, 2002) ("The juxtaposition of two inconsistent statements renders the notice invalid under § 1692g.") (quoting Savino, 164 F.3d at 85). As such, the court "conclude[d] that a jury must decide whether the least sophisticated consumer could believe that any challenge to his debt had to be in writing," and reasoned that

> [t]he least sophisticated consumer confused by defendant's letter might choose not to notify the debt collector that she disputes a debt's validity because she cannot or will not dispute the debt in writing. "The defendant's letter could therefore hamper a consumer's efforts to communicate the fact that she disputes a debt, thereby depriving her of the statutory protection afforded consumers who notify a collector that the validity of a debt is contested."

Id. (quoting Castro v. A.R.S National Services, Inc., 99 Civ. 4596 (HB), 2000 U.S. Dist. LEXIS 2618, 99 Civ. 4596, at *11 (S.D.N.Y. Mar. 8, 2000)).

This Court finds the court's reasoning in In re Risk Mgmt. to be applicable to the present action. Indeed, in this case, it is possible that the disputed passage, when viewed as a whole, could confuse the least sophisticated consumer into believing that a written notice is the only permissible way to dispute the debt. Accordingly, assuming the factual allegations in the Amended Complaint are true, the Defendant's May 5, 2012 validation notice would violate the FDCPA if it is determined that "it conveys [the statutorily required] information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." Nasca, 2002 U.S. Dist. LEXIS at *13 (quoting DeSantis, 269 F.3d at 161). Indeed, as highlighted earlier, "[w]hen a notice contains language that overshadows or contradicts other language informing a consumer of her rights, it violates the [FDCPA]." Savino, 164 F.3d at 85 (citation omitted).

The Court now turns to the Plaintiff's claim that the validation notice also violated § 1692g(3) by stating that "If no notice is received by RCS within the 30 day period, it will be assumed that the above information is accurate and the debt is valid," rather than specifically stating that the Defendant will assume the debt is valid. In response, the Defendant asserts that its validation notice was proper because nowhere did it imply that the debt will be adjudged by any Court, government body or any other entity as absolutely valid.

However, the Court finds the Defendant's argument to be unavailing. The FDCPA requires that a validation notice specifically include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*." 15 U.S.C. § 1692g(a)(3) (emphasis added). Therefore, as other courts have held, "the absence of the term 'by the debt collector,' or its equivalent here, is a sufficient allegation [of an FDCPA violation] to survive the standard for a motion to dismiss." Philip v. Sardo & Batista, P.C., Civil Action No. 11-4773

(SRC), 2011 U.S. Dist. LEXIS 130267, at *12 n. 1, 13 (D.N.J. Nov. 10, 2011) (analyzing the statement "Should we not receive your written dispute, it shall be assumed this debt is valid"); see also Galuska v. Collectors Training Inst. of Illinois, No. 07-2044, 2008 U.S. Dist. LEXIS 39508 at *17–18 (M.D. Pa. May 13, 2008) (holding that a "failure to include the term 'by the debt collector' may be deceptive to the least sophisticated debtor when considering the whole document validation notice" where the validation notice stated that "Unless you notify this office within thirty (30) days after the receipt of this notice that you dispute the validity of the debt, or any portion thereof, this debt will be assumed to be valid") (emphasis removed).

Finally, it appears that the Defendant has failed to address the Plaintiff's claims that the validation notice violated the FDCPA because it improperly stated that (1) the Defendant had to receive the Plaintiff's notice of dispute within 30 days and (2) failure by the Plaintiff to dispute the debt within the 30 day period would result in all information in the validation notice being deemed accurate, even information that the Plaintiff knew nothing about. With respect to the second claim, the Court finds that there is nothing in the FDCPA that allows a debt collector to include such a broad and sweeping statement; rather, the debt collector must include a statement that the failure to respond shall mean that the debt, and nothing else, will be assumed to be valid by the debt collector. 15 U.S.C § 1692g(3).

As to the first claim, to reiterate, the validation notice at issue here states "If no notice is *received* by RCS within the 30 day period, it will be assumed that the above information is accurate and the debt is valid." (Amend. Compl., Exh. A., emphasis added). However, 15 U.S.C. § 1692g(3) does not require that a debt collector receive a consumer's notice of dispute within thirty days. Indeed, the Second Circuit has held that "the recipient of a debt collection letter covered by the FDCPA validly invokes the right to have the debt verified whenever she

*mails* a notice of dispute within thirty days of receiving a communication from the debt collector." Jacobson, 516 F.3d at 95 (emphasis added). As such, "[b]y requiring the notice to be received by the debt collector within thirty days, the [validation notice in this case] shortens the period during which the recipient may seek verification of the debt." Id. Therefore, assuming the factual allegations in the Amended Complaint are true, the validation notice presented in this action "violates the FDCPA, because it contradicts [the Plaintiff's] rights under § 1692g." Id.

Accordingly, viewing the Plaintiff's Amended Complaint in light most favorable to the Plaintiff, the Court finds that the Plaintiff has stated a claim for relief under the FDCPA that is plausible on its face. In this regard, the Amended Complaint highlights various portions of the Defendant's collection letter that may be in violation of the FDCPA. Therefore, the Defendant's motion to dismiss is denied.

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** the Defendant's motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) is hereby denied.

**SO ORDERED.**
Dated: Central Islip, New York
April 29, 2013

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge