**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ALTAGRACIA DIAZ, on behalf of herself and
all others similarly situated,

                   Plaintiff,              **MEMORANDUM OF**
                                            **DECISION AND ORDER**
         -against-                12-CV-3781 (ADS) (ETB)

RESIDENTIAL CREDIT SOLUTIONS, INC.,

                   Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**Kleinman LLC**
*Attorneys for the Plaintiff*
626 RXR Plaza
Uniondale, NY 11556-0626
   By:  Abraham Kleinman, Esq., Of Counsel

**Edelman, Combs, Latturner & Goodwin, LLC**
*Attorneys for the Plaintiff*
120 South LaSalle Street
18th Floor
Chicago, IL 60603
   By:  Cathleen M. Combs, Esq., & Tiffany N. Hardy, Esq., of Counsel

**Lowenstein Sandler PC**
*Attorneys for the Defendant*
1251 Avenue of the Americas
New York, NY 10020
   By:  Jason E. Halper, Esq., of Counsel

**SPATT, District Judge.**

On July 31, 2012, the Plaintiff Altagracia Diaz ("the Plaintiff"), on behalf of herself and

all others similarly situated, commenced this action against the Defendant Residential Credit

Solutions, Inc. ("the Defendant" or "RCS") for alleged unlawful credit and collection practices

engaged in by the Defendant in violation of the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692 et seq. ("FDCPA"). Presently before the Court is the Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23. In this regard, the Plaintiff seeks to certify a class defined as (a) all individuals in New York (b) who were sent a letter in the form of the form letter attached to the Plaintiff's motion papers as Exhibit A, which was not returned as undeliverable, (c) on or after July 31, 2011, and on or before August 20, 2012.

For the reasons set forth below, the Court denies the Plaintiff's motion without prejudice with leave to renew upon the submission of evidence concerning the Plaintiff's adequacy as the class representative in this action.

## I. BACKGROUND

The Defendant is a servicing company that manages performing and nonperforming residential mortgage loans. According to the Plaintiff, the Defendant is a "special servicer," which means that it services distressed mortgages and attempts to collect on consumer mortgages that are in default when the Defendant first becomes involved. (Amend. Compl., ¶ 6.)

On or about May 5, 2012, the Defendant sent a validation notice to the Plaintiff, an individual, seeking to collect an alleged consumer debt. In this regard, the validation notice claimed that the Plaintiff owed a sum to JP Morgan Mortgage Acquisition Corporation ("JP Morgan") in connection with a mortgage loan. The total debt was for $370,430.91.

According to the Plaintiff, the validation notice "is a form letter (designated OL0315) which [the] [D]efendant uses for the purpose of attempting to comply with 15 U.S.C. § 1692g." (Amend. Compl., ¶ 9.) In addition, it is alleged that the "Plaintiff did not receive any other document from [the] [D]efendant purporting to contain the initial disclosures required by 15 U.S.C. § 1692g." (Amend. Compl., ¶ 10.)

The Defendant's May 5, 2012 letter advised the Plaintiff as follows:

> You may notify RCS in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed. If no notice is received by RCS within the 30 day period, it will be assumed that the above information is accurate and the debt is valid. If/once written notice is received within the 30 day period, RCS will obtain verification of the debt or a copy of a judgment against you, the consumer. A copy of the verification of debt or judgment will be mailed to the mailing address on record for you along, with, if requested in writing, a statement that provides the name and address of the original creditor.

(Amend. Compl., Exh. A.)

The Plaintiff asserts that this passage violates the FCPA, specifically 15 U.S.C. §§ 1692g(a), 1692e, 1692e(2) and 1692e(10). In this regard, the Plaintiff alleges that the letter (1) "[s]tates that any dispute that the debtor elects to send is to be in writing, when a writing is only necessary to obtain verification of the debt or the identification of the original creditor"; (2) indicates that the Defendant needs to receive notice that the debt is being disputed within the 30 day period, when the Plaintiff is only required to send her notice within that period and is not required to guarantee receipt; (3) "[s]tates that '[i]f no notice is received by RCS within the 30 day period, it will be assumed that . . . the debt it is valid," without limitation, when only RCS and its principal may assume that it is valid"; (4) "[s]tates that all information set forth in the letter concerning the debt will be assumed to be valid, including information which the debtor knows nothing about and can know nothing about, such as whether RCS is holding any 'unapplied funds' and whether there is a negative 'escrow balance,'" even though there is no authorization for this found in 15 U.S.C. § 1692g; and (5) fails to notify the debtor that he has the right to dispute a portion of the debt. (Amend. Compl, ¶ 12; Pl. Mem., pg. 2–4.)

# II. DISCUSSION

## A. Legal Standard for Class Certification

Before certifying a putative class, the Court must determine (1) whether the class meets the four Rule 23(a) requirements of numerosity, commonality, typicality and adequacy; and if so, (2) whether the class satisfies one of the three categories listed in Rule 23(b). See Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008); City of Livonia Employees' Ret. Sys. v. Wyeth, 284 F.R.D. 17, 176–77 (S.D.N.Y. 2012). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010).

As the Supreme Court recently observed:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule--that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and [] certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011) (citations and internal quotation marks omitted); see also Secs. Litig. v. Gen. Reinsurance Corp. (In re Am. Int'l Group Inc.), 689 F.3d 229, 237 (2d Cir. 2012); Oakley v. Verizon Comm'ns., Inc., No. 09 Civ. 9175(CM), 2012 WL 335657, at *12 (S.D.N.Y. Feb. 1, 2012) (holding that while "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, . . . where merits issues cannot be

avoided they must be addressed"). Thus, "the United States Supreme Court has made it clear that courts cannot certify classes where Rule 23 requirements are not met, and should not contort the requirements in order to certify." Oakley, 2012 WL 335657, at *12.

However, in deciding certification, courts must still take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class. See Flores v. Anjost Corp., 284 F.R.D. 112, 122 (S.D.N.Y. 2012); Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000). Further, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Kowalski v. YellowPages.com, LLC, 10 Civ. 7318 (PGG), 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012) (quoting Lewis Tree Service, Inc. v. Lucent Technologies, 211 F.R.D. 228, 231 (S.D.N.Y. 2002).

## B. Legal Standard Under the FDCPA

"The FDCPA creates a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (citing 15 U.S.C. § 1692e). In this regard, 15 U.S.C. § 1692e(2), in relevant part, prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). Also, § 1692e(10) proscribes a debt collector from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

In addition, pursuant to 15 U.S.C. § 1692g, debt collectors must "include a 'validation notice' either in the initial communication with a consumer in connection with the collection of a

debt or within five days of that initial communication, which must inform the consumer that he or she has certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of debt." Miller, 321 F.3d at 309 (citing 15 U.S.C. § 1692g(a)). In particular, § 1692g(a) requires that the validation notice include:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification of judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

See Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F. Supp. 2d 200, 205 (E.D.N.Y. 2009). "[U]nless a debt collector conveys this statutorily-required information, it violates the [FDCPA]." Hecht v. Green Tree Servicing, LLC, Civil No. 3:12cv498(JBA), 2013 WL 164514, at *2 (D. Conn. Jan. 15, 2013). Also, of relevance in the instant case, § 1692g(c) states that "the failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."

The Second Circuit has provided the following guidance for analyzing alleged violations of § 1692(g):

"When determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied." Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996) (citing Clomon [v. Jackson], 988 F.2d [1314, 1318 (2d Cir. 1993)] (holding that the least sophisticated consumer standard applies to whether § 1692e has been violated)). "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the [FDCPA]." Id. (citing Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991)). "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998).

Miller, 321 F.3d at 300. See also, Hecht, 2013 WL 164514, at *2 ("'[E]ven if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'") (citing DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001)).

Of importance, "the plaintiff's actions in response to [a] collection letter are not determinative of the question of whether there has been a violation of the FDCPA. Rather, the issue is an objective one: namely, whether the language of the letter would mislead the least sophisticated consumer." Wyler v. Computer Credit, Inc., No. 04CV2762 CLP, 2006 WL 2299413, at *11 (E.D.N.Y. Mar. 3, 2006).

In addition, courts have found that "the FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector." Fasten v. Zager, 49 F. Supp. 2d 144, 148 (E.D.N.Y. 1999); see also Moore v. Diversified Collection Services, Inc., 843 F. Supp. 2d 280, 284 (E.D.N.Y. 2012). Instead, the court need only find proof of a single violation of the FDCPA to establish civil liability against the debt collector. See Bentley v. Great Lakes Collection Bureau, 6 F.3d 60 (2d Cir. 1993); Fasten, 49 F. Supp. 2d

at 148; Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C., No. 96 CIV. 1756(LAP), 1997 WL 171011, at *4 (S.D.N.Y. Apr. 10, 1997); Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724 (D. Conn. 1990). However, "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C § 1692k(c). A debt collector who is found to have violated the FDCPA is liable for (1) actual damages; (2) statutory damages, not to exceed $1,000; and (3) the costs of the action, including reasonable attorneys' fees. 15 U.S.C. § 1692k(a); see also Nero, 655 F. Supp. at 209–10.

As a final matter, the Court notes that under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person [or] concerns a debt which was not in default at the time it was obtained by such person[.]" Id.

As such, the actions of a mortgage servicer, like the Defendant, would only be covered under the FDCPA if the debt at issue was acquired after the customer or debtor defaulted on the loan in question. See Muniz v. Bank of America, N.A., No. 11 Civ. 8296(PAE), 2012 WL 2878120, at *5 (S.D.N.Y. July 13, 2012) ("[B]ecause plaintiffs fail to adequately allege that the loan was in default [when it was obtained], they fail to allege that [the Defendant] is a "debt collector" under the FDCPA."); Costigan v. CitiMortgage, Inc., No. 10 Civ. 8776(SAS), 2011

WL 3370397, at *9 (S.D.N.Y. Aug. 2, 2011) ("The Amended Complaint does not allege that [the plaintiff's] loan was in default at the time [the defendant] 'obtained' that loan. As a result, [the defendant] is excluded from the definition of 'debt collector' under the statute."); Thomas v. JPMorgan Chase & Co., 811 F. Supp. 2d 781, 801–02 (S.D.N.Y. 2011) ("[T]he [amended complaint] does not allege that the loans of the named plaintiffs were in default at the time [the defendant] 'obtained' those loans. As a result, [the defendant] is excluded from the definition of 'debt collector' under the statute."); Zirogiannis v. Dreambuilder Investments LLC, 782 F. Supp. 2d 14, 19 (E.D.N.Y. 2011) (Spatt, J.) ("[W]hile the defendants implicitly admit that [one of the defendants] acquired the plaintiff's mortgage loan after it was in default, this fact is nowhere alleged in the complaint. Without this allegation, the plaintiff has not stated a basis for treating [that defendant] as a debt collector under the FDCPA.").

## C. As to Whether the Plaintiff Meets Rule 23(a) Requirements

To qualify for class certification, the Plaintiff must first prove that the putative class meets the four threshold requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4); see also Salim Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 251 (2d Cir. 2011). As set forth below, the Court finds that the Plaintiff has met three of the four Rule 23(a) requirements and, therefore, denies the Plaintiff's motion for class certification without prejudice with leave to renew.

### 1. Numerosity

Rule 23(a)(1), known as the numerosity requirement, requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable," in this context, does not mean impossible; instead Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be "simply difficult or inconvenient." Russo v. CVS Pharm., Inc., 201 F.R.D. 291, 294 (D. Conn. 2001); see also Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

"There is no magic minimum number that will breathe life into a class, but generally, courts will find a class sufficiently numerous when it comprises forty or more members." Russo, 201 F.R.D. at 294 (citations and internal quotation marks omitted). "As plaintiff bears the burden of demonstrating numerosity, he must show some evidence of or reasonably estimate the number of class members." Id. at 295. Therefore, while "evidence of exact size or identity of class members is not required," a plaintiff cannot rely on "pure speculation or bare allegations" in order to demonstrate numerosity. Flores, 284 F.R.D. at 123 (citations and internal quotation marks omitted).

However, "in assessing numerosity[,] a court may [also] make common sense assumptions without the need for precise quantification of the class." Russo, 201 F.R.D. at 294; see also Flores, 284 F.R.D. at 123. In addition, particularly when a class is not obviously numerous, the Court should consider the following factors: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Robidoux, 987 F.2d at

936; see also Pecere, 194 F.R.D. at 70; Martin v. Shell Oil Co., 198 F.R.D. 589, 590 (D. Conn. 2000).

In this case, the Plaintiff asserts that numerosity has been met, because the Defendant is a mortgage company and therefore acquires portfolios of debts as opposed to individual debts. As a result, according to the Plaintiff, it is reasonable to presume that the Defendant has sent a similar form letter like the one the Plaintiff received to other alleged debtors. Further, the Plaintiff points out that in 2010, the Defendant brought more than eighty mortgage foreclosure suits in the state of New York and suggests that the defendants in these foreclosure actions received a nearly identical form letter as the Plaintiff did.

Although the Defendant contests numerosity on the basis that the Plaintiff has not presented the Court with significant proof that the requirement has been satisfied, it nevertheless concedes that it sent a similar form letter to 720 individuals in New York during the period of July 31, 2011 through August 20, 2012 and that 342 of those individuals who received the form letter were not in default at the time that the Defendant began servicing their loans. (Curzan Decl., ¶¶ 7–9.) Thus, the Court is able to reasonably estimate the size of the class as being 378 individuals, as that would have been the number of consumers who (1) received the form letter at issue and (2) were in default at the time the Defendant began servicing their loans, so that the Defendant was a debt collector subject to the requirements under the FDCPA. See Muniz, 2012 WL 2878120, at *5; Costigan, 2011 WL 3370397, at *9; Thomas, 811 F. Supp. 2d at 801–02; Zirogiannis, 782 F. Supp. 2d at 19.

Therefore, while the Defendant raises concerns that the Plaintiff's proposed class may be over-inclusive, the Court finds that, with respect to numerosity, the Plaintiff has satisfied her burden and that the class is sufficiently numerous based on the 378 figure provided by the

Defendant's admissions. As stated above, the Court does not need evidence of exact class size or identity of class, see Robidoux, 987 F.2d at 935, and may "make common sense assumptions without the need for precise quantification of the class," Russo, 201 F.R.D. at 294. Accordingly, as the Court may reasonably infer that the 378 consumers are similarly situated, the Court finds that Fed. R. Civ. P. 23(a)(1)'s numerosity requirement has been met.

**2. Commonality**

"To satisfy the commonality requirement of Rule 23(a)(2), there must be 'a showing that common issues of fact or law exist and that they affect all class members.'" Kowalski, 2012 WL 1097350, at *13 (quoting Leone v. Ashwood Fin., Inc., 257 F.R.D. 343, 351 (E.D.N.Y. 2009)). However, the individual circumstances of the class members can differ without precluding class certification, so long as "the common questions are at the core of the cause of action alleged." Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003); see also Kowalski, 2012 WL 1097350, at *13 (holding that "[t]he commonality standard does not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs" but does "require[ ] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment") (citations and internal quotation marks omitted).

In its 2011 decision in Wal-Mart Stores Inc. v. Dukes, the Supreme Court held that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," as opposed to simply "suffer[ing] a violation of the same provision of law." Dukes, 131 S. Ct. at 2551. In other words, "[t]heir claims must depend upon a common contention . . . that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. Thus, "[w]hat really matters to class certification . . . is not the raising of

common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. at 2551 (citations and internal question marks omitted) (emphasis in original); see also Flores, 284 F.R.D. at 125.

Here, in opposition to the Plaintiff's motion for class certification, the Defendant contends that the commonality requirement of Fed. R. Civ. P. 23(a)(2) has not been met because the Court will be required to make individual determinations as to whether each class member was already in default at the time the Defendant began servicing the loan at issue.  This is because, as indicated above, the Defendant would only be considered a debt collector and thus accountable under the FDCPA in those cases where it sent the form letter to consumers whose loans were acquired by the Defendant after they were in default.  See 15 U.S.C. § 1692a(6).

However, "[c]ommonality may be met even though individual circumstances differ, so long as class members' injuries derive from a unitary course of conduct." Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 354 (E.D.N.Y. 2011) (quoting Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (in turn, quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997))) (internal quotation marks omitted).  Thus, in the Court's view, the Plaintiff has established commonality because the resolution of this action will rest on whether the Defendant's alleged conduct in sending the form letters violated numerous provisions of the FDCPA.  The only individual determination for the Court to make is the identity of the class members, which can be simply resolved by reviewing the Defendant's records.  As explained below, while the Court finds that some of the Defendant's concerns are suitable considerations with respect to the appropriateness of the Plaintiff's proposed class definition, the Court does not believe these concerns prevent a finding that the commonality requirement has been met.

### 3. Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. Known as the typicality requirement, this provision is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. Vengurlekar, 220 F.R.D. at 227. However, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux, 987 F.2d at 936–937; see also Vengurlekar, 220 F.R.D. at 227 (holding that "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification") (citations and internal quotation marks omitted).

In this case, the Defendant suggests more discovery is needed to determine if the Plaintiff's claims are typical of the putative class members. However, the Plaintiff's claims are straightforward so that the Court finds that additional discovery is unnecessary. Indeed, the Plaintiff claims that she received a form letter from the Defendant that violated the FDCPA and that the Defendant also sent similar form letters to the proposed class members. Thus, in litigating this case, the Plaintiff and the potential class members will set forth the same claims based on the alleged FDCPA violations in the form letters. As such, the Court finds that the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4)'s adequacy of representation requirement requires that a plaintiff "also show that the proposed action will fairly and adequately protect the interests of the class,"

<u>Vengurlekar</u>, 220 F.R.D. at 227, and "serves to uncover conflicts of interest between names parties and the class they seek to represent," <u>Wyeth</u>, 284 F.R.D. at 179. <u>See</u> <u>Vengurlekar</u>, 220 F.R.D. at 227 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.") (citation omitted).

In order to satisfy Rule 23(a)(4), a "plaintiff[ ] first must demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation." <u>Id.</u> (citations and internal quotation marks omitted). Second, a plaintiff must "show that [he has] no interests that are antagonistic to the proposed class members." <u>Id.</u>

The Court finds that the Plaintiff has satisfied the first element under Rule 23(a)(4). The Plaintiff's counsel have extensive experience in litigating matters under the FDCPA both in class actions and in individual suits. However, with respect to the second element of Rule 23(a)(4), the Court agrees with the Defendant that the Plaintiff has presented no evidence concerning whether the Plaintiff is an adequate representative of the class. Although it is likely, because she shares identical claims with the proposed class members, that the Plaintiff does not have any conflicts of interest, the Court still finds this fourth requirement of 23(a) to not be satisfied as the Plaintiff fails to proffer any proof suggesting she will be able to adequately represent the proposed class without any antagonistic interests.

In this regard, in <u>Harrison v. Great Springwaters of America, Inc.</u>, No. 96-CV-5110, 1997 WL 469996 (E.D.N.Y. June 18, 1997), the court suggested that "courts generally certify proposed representatives 'as long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyers' advice.'" <u>Id.</u> at *7 (quoting <u>Kaplan v. Pomerantz</u>, 131 F.R.D. 118, 122 (N.D. Ill. 1990)). Here, the Court has been provided

with no evidence concerning the Plaintiff's basic knowledge of this lawsuit or whether she is able to make intelligent decisions based on advice from her counsel.

Thus, in the Court's view, the Plaintiff has not satisfied her burden of demonstrating she is an adequate representative of the putative class. Absent any evidence, such as an affidavit or declaration from the Plaintiff, the Court must find that the Plaintiff has not met the requirement of Fed. R. Civ. P. 23(a). See, e.g., Leone v. Ashwood Financial, Inc., 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding that the plaintiff has satisfied the requirements of Fed. R. Civ. P. 23(a)(4) where she "submitted an affidavit stating that she understands the responsibilities of a class representative and has knowledge of this action.")  As a consequence, the Court denies the Plaintiff's motion for class certification without prejudice with leave to renew upon the submission of proof that the Plaintiff (1) understands her role as a class representative; (2) is knowledgeable about this action; and (3) has no known conflicts of interest with any of the potential class members.

**D. As to Whether the Plaintiff Meets the Rule 23(b)(3) Requirements**

If on a renewed motion, the Plaintiff satisfies the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), the Court will then be required to consider whether the Plaintiff has met the requirements of Fed. R. Civ. P. 23(b)(3).  Therefore, in the interest of judicial economy and because both parties have had the opportunity to present their arguments, the Court shall now consider this issue.

As indicated above, once a plaintiff satisfies the four Rule 23(a) requirements, she must also prove that the putative class is maintainable under at least one of the three categories enumerated in Rule 23(b).  See In re Visa Check, 280 F.3d at 133.  In this case, the Plaintiff seeks class certification under Rule 23(b)(3).  A putative class is maintainable under Rule

23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). See In re Am. Int'l Group Inc., 689 F.3d at 239. As set forth below, the Court finds that the Plaintiff has met the Rule 23(b)(3) requirements.

### 1. Predominance

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" in order to "ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Myers, 624 F.3d at 547 (citations and internal quotation marks and alterations omitted). Thus, while the commonality requirement of Rule 23(a)(2) mandates that common questions of law or fact exist among the putative class members, the predominance requirement of Rule 23(b)(3) is more stringent and requires that such common questions be the focus of the litigation. See Continental Orthopedic Appliances, Inc. v. Health Insurance Plan of Greater New York, Inc., 198 F.R.D. 41, 44 (E.D.N.Y. 2000). Accordingly, "the requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Myers, 624 F.3d at 547 (citations and internal quotation marks omitted).

In this case, the common question presented is whether the form letter sent by the Defendant to consumers violated numerous provisions of the FDCPA. In the Court's view, the non-common questions, such as a determination of the identity of the putative class members, are

not more substantial than the common question of whether the form letter was illegal. Indeed, as discussed below, the question of the identity of the class members can be easily resolved by modifying the Plaintiff's proposed class definition. As such, predominance has been satisfied.

### 2. Superiority

"The second prong of Rule 23(b)(3), commonly referred to as the superiority element, requires the court to examine whether a class action is superior to other methods of adjudication." See Vengurlekar, 220 F.R.D. at 228. Four factors the Court should consider in determining whether a class action is the superior method of adjudicating a putative class' claim are provided in Rule 23(b)(3):

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). See also Oakley, 2012 WL 335657, at *18.

Here, "it appears the prosecution of this case as a class action would uphold the Court's interest in a fair and efficient adjudication better than a joint action among the putative class would." Nieves v. Cmty. Choice Health Plan of Westchester, Inc., 08 CV 321 (VB)(PED), 2012 WL 857891, at *3 (S.D.N.Y. Feb. 24, 2012). First, the amount of each class members individual claims is very small so it is not likely that any of them would have a specific interest in individually controlling the prosecution of the action. Further, even though the size of the class reaches 378 members, because the Plaintiff's attorneys have extensive experience with this type of litigation, the Court finds it would be manageable.

Nevertheless, the Defendant argues that the superiority requirement has not been met because (1) the Plaintiff offers no explanation as to why the putative class period should be extended beyond one year, to August 20, 2012; and (2) the class definition only includes consumers from New York as opposed to consumers nationwide, which could result in piecemeal litigation.  In reply, the Plaintiff asserts that (1) the FDCPA does not entitle to the Defendant to the broadest possible class and (2) a statewide class is appropriate because a number of states, not including New York, have state collection practice laws which give consumers residing there additional rights and the Plaintiff does not have standing to represent such claims.  The Plaintiff further asserts that the August 20, 2012 cutoff date permitted the Defendant twenty days after the July 31, 2012 filing of this lawsuit to correct its practices while, at the same time, preventing the Defendant from paying one-percent of its net worth and obtaining a legal license to continue its allegedly unlawful conduct.

The Court agrees with the Plaintiff.  "[T]he language of [the] FDCPA does not support the conclusion that the statute requires nationwide class certification," especially because "several problems aris[e] from requiring nationwide class certification in FDCPA cases, including 'a short, one-year statute of limitations making multiple lawsuits more difficult' and the problem of de minimis recovery."  Mailloux v. Arrow Financial Services, LLC, 204 F.R.D. 38, 43 (E.D.N.Y. 2001) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 343–44 (7th Cir 1997)); see also D'Alauro, 168 F.R.D. 451, 455 (E.D.N.Y. 1996) ("[T]he plain meaning of the FDCPA does not require that the largest potential class be certified . . . . [A]n FDCPA class need not include all potential plaintiffs and may be limited geographically consistent with the legislative intent of the FDCPA.").  Rather, in FDCPA cases, courts have approved statewide class actions as opposed to nationwide class actions, finding that "[s]uch a class will be more

easily managed by [the] [c]ourt" and would also assist class members "who might otherwise be unwilling to travel to distant fora [to testify during the damages phase] for a relatively small sum." <u>Macarz v. Transworld Systems, Inc.</u> 193 F.R.D. 46, 57 (D. Conn. 2000); <u>see also</u> <u>Mailloux</u>, 204 F.R.D. at 43 (approving a class of New York State consumers in an FDCPA Case even though a similar action based on an identical collection letter was previously filed in Illinois).

The Court is also satisfied with the Plaintiff's explanation concerning why it seeks to certify a class encompassing the period of July 31, 2011 until August 20, 2012. In the Court's view, it is sensible for the putative class period to be extended by twenty days so as to include other consumers who may have received the allegedly illegal form letter from the Defendant during that time. Accordingly, the Plaintiff has satisfied the superiority requirement.

**E. As to the Plaintiff's Proposed Class Definition**

Once a court determines that class certification is appropriate, "[t]he next question is whether the definition of the class proposed by [the] plaintiff[ ] . . . is an appropriate one." <u>Brooklyn Ctr. for Independence of the Disabled v. Bloomberg</u>, 287 F.R.D. 240, 250 (S.D.N.Y. 2012). In this regard, "[u]nder rule 23, district courts have the power to amend class definitions or decertify classes as necessary . . . . 'In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision.'" <u>Id.</u> (quoting <u>Morangelli v. Chemed Corp.</u>, 275 F.R.D. 99, 114 (E.D.N.Y. 2011).

In this case, the Court has denied the Plaintiff's motion for class certification without prejudice, finding that the Plaintiff has satisfied all but one of the requirements of class certification under Fed. R. Civ. P. 23. Nevertheless, as the Court has provided the Plaintiff an

opportunity to renew her motion upon submission of evidence concerning the adequacy of representation requirement, the Court shall address the Plaintiff's proposed class definition.

Here, the Plaintiff seeks to certify a class of 378 consumers in the state of New York who received substantially similar form letters and who claim that by sending these letters, the Defendant violated the FDCPA. To that end, the Plaintiff proposes the following class definition:

> (a) all individuals in New York (b) who were sent a letter in the form of the form letter attached to the Plaintiff's motion papers as Exhibit A, which was not returned as undeliverable, (c) on or after July 31, 2011, and on or before August 20, 2012.

(Pl. Motion, Opening ¶.)

However, in the Court's view, the Plaintiff's proposed class definition is problematic insofar as it is over inclusive. In this regard, the proposed class definition may include individuals whose debts were acquired by the Defendant before they were in default, so that the Defendant would not have been a debt collector subject to the provisions of the FDCPA when acting to collect these debts. While the Defendant raised these concerns while challenging the Plaintiff's motion for class certification, the Court finds that these concerns can be adequately addressed by modifying the Plaintiff's proposed class definition, so as to clearly exclude those individuals that fall outside the class.

As such, the Court finds the following to be an appropriate class definition in this case:

> (a) all individuals in New York (b) who were sent a letter in the form of the form letter attached to the Plaintiff's motion papers as Exhibit A, which was not returned as undeliverable, (c) on or after July 31, 2011, and on or before August 20, 2012; (d) concerning a loan that the Defendant acquired after it was in default.

### III.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Plaintiff's motion to certify a class is denied without prejudice with leave to renew upon the submission of evidence with respect to the Plaintiff's ability to adequately represent the class as required by Fed. R. Civ. P. 23(a)(4); and it is further

**ORDERED** that any renewed  motion by the Plaintiff  for class certification should be in accordance with this Order, including the Court's finding that an appropriate class definition is as follows:  (a) all individuals in New York (b) who were sent a letter in the form of the form letter attached to the Plaintiff's motion papers as Exhibit A, which was not returned as undeliverable, (c) on or after July 31, 2011, and on or before August 20, 2012; (d) concerning a loan that the Defendant acquired after it was in default.

**SO ORDERED.**
Dated: January 23, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge
